## WESTERN UNION TELEGRAPH COMPANY v. JACKSON BLAKE.

### Decided April 30, 1902.

**1.—Contract—Law of Foreign State.**

Where, by the nature and terms of the contract, it appears that it was to be executed in another country, then the place of its making becomes immaterial, and the law of the place where it is to be performed governs in determining the rights of the parties; and as it will be presumed that the contract was entered into with reference to the laws of such other country, those laws will be resorted to in ascertaining its validity, obligation, and effect.

**2.—Same—Telegraph Company—Mental Anguish.**

Where a message was delivered to a telegraph company in Arkansas for transmission to plaintiff in Texas, the contract was to be performed in Texas, and although the message was never sent out at all, the breach, consisting in nondelivery, occurred in Texas, and hence the plaintiff could recover, under the Texas law, for mental suffering resulting from such breach, although no recovery could be had therefor under the laws of Arkansas.

Appeal from the County Court of Lamar. Tried below before Hon. Wm. Hodges.

*Geo. H. Fearons, M. R. Geer,* and *N. L. Lindsley,* for appellant.

*Moore, Parker & Birmingham,* for appellee.

NEILL, ASSOCIATE JUSTICE.—"Cotton Plant, Ark., Jan. 13, 1901.— To Jackson Blake, Paris, Texas: Grandma low sick. Come at once. John T. Blake."

The above telegram was on the day of its date delivered by John T. Blake, as the agent of and for the benefit of the sender, to appellant at its office in Cotton Plant, State of Arkansas, for transmission and delivery to Jackson Blake, at Paris, Lamar County, Texas. Though the company accepted the message and received pay for its transmission and delivery, it was in fact never transmitted, nor wirded from Cotton Plant, but remained in the company's office there without any effort on the part of the company or its agents to transmit it at all.

Jackson Blake is the son of the person designated in the telegram as "Grandma." She was then on her deathbed, and died before appellee could have reached her after receiving the message, had it been transmitted and delivered with reasonable dispatch; but if it had been so

transmitted and delivered he would have received it in time to have attended her burial, which he would have done.

By reason of the negligent failure of appellant to promptly transmit and deliver the message to appellee at Paris, Texas, he there suffered mental anguish, to his damage in the sum of $325, on account of not being able to be present at the burial of his mother in Arkansas.

These facts are shown by the evidence and established by the verdict, and for the purpose of this appeal are undisputed by the appellant.

The question raised in different forms by the assignments of error, is, do these facts show any liability on the part of appellant for the damages occasioned by mental anguish suffered by appellee in Texas by reason of the company's negligent failure to promptly transmit and deliver the telegram?

It is urged by appellant that contract to transmit and deliver the message was made and broken in the State of Arkansas, where mental anguish is not recognized as an element of damages flowing from a breach of a contract of this character. This to our minds is a very narrow view to take of the question. While the contract was made in Arkansas, it was to be performed by the transmission of the telegram to Paris, Texas, and its delivery there to appellee. From the very nature of the contract, he could receive no benefit whatever from it unless it was performed by the delivery of the message to him at Paris. Such performance was the obligation due him there by the appellant, and its failure to discharge this obligation is the proximiate cause of his anguish and damages.

Appellant's failure to send the message out of Arkansas is simple evidence conclusive of a breach of its contract, not of where the breach occurred. The breach occurred where under the contract it was to be performed, and consisted of the nondelivery of the message. This was at Paris, Texas. There the damages flowing from the breach were sustained. There jurisdiction was acquired and the case tried. It is by the law of the State where the contract was to be performed, and was breached in its performance, and the anguish suffered in consequence, the damages should be measured and determined.

In obligations it is the will of the contracting parties, and not the law, which fixes the place of performance, either by express words or implication, as the place to the jurisdiction of which the contracting parties elected to submit themselves. And a contract is governed by the law with a view to which it is made, because, by the consent of the parties, that law becomes a part of the agreement. Pritchard v. Norton, 106 U. S., 124, 27 L. Ed., 104. "If, by the nature and terms of the contract, it appears it was to be executed in another country, then the place of making the contract becomes immaterial, and the law of the place where the contract is to be performed governs in determining the rights of the parties. If a contract is made in one State or county, and it is to be performed in another, it will be presumed that it was entered into

with reference to the laws of the latter, and those laws will be resorted to in ascertaining the validity, obligation, and effect of the contract." Beach on Mod. Law of Con., sec. 592, and authorities cited in note; Telegraph Co. v. Eubank, 38 S. W. Rep. (Ky.), 1068; Packing Co. v. Telegraph Co., 70 Ill., 275. The opinion of this court in Thomas v. Telegraph Company, 25 Texas Civil Appeals, 398, is in perfect harmony with the principles stated.

There is no error in the judgment and it is affirmed.

*Affirmed.*